# EXHIBIT 1

## Perjured Declaration of Dana Lantry with Exhibit

### Filed 10/07/15 Case 3:14-cv-01836-MO Document 108

### U.S. District Court Oregon, Portland Division

**NOTE:** Washington County Oregon Recorded Instrument No. 2006-077542 endorsed by Dana Lantry as Asst. Vice President of People's Choice Home Loans, Inc. is fraudulently **OMITTED** from the exhibits with intent to deceive

(See Exhibit 2)

Erick J. Haynie, OSB No. 982482
EHaynie@perkinscoie.com
Gabrielle D. Richards, OSB No. 114992
GRichards@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Attorneys for Plaintiff
LNV Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LNV CORPORATION, a Nevada corporation,<br><br>              Plaintiff,<br><br>v.<br><br>DENISE SUBRAMANIAM,<br><br>              Defendant. | Case No. 3:14-cv-01836-MO<br><br>DECLARATION OF DANA B. LANTRY IN SUPPORT OF PLAINTIFF'S OBJECTION TO AND MOTION TO STRIKE AUDIO RECORDING OF DANA LANTRY |

I, Dana B. Lantry, declare as follows:

1.    I am a resident of Fountain Valley, California.

2.    I was employed in the mortgage industry for 35 years before retiring in 2013.

3.    I was an officer at People's Choice Home Loan from approximately April 2000 until March 2007.  I held various titles while employed by People's Choice, including Vice President and Assistant Vice President.

4.    In my role as an officer at People's Choice, I routinely endorsed mortgage

1-   DECLARATION OF DANA B. LANTRY

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

79707-0017/128125662.1

documents, including allonges to notes and deed of trust assignments.

5.      On or about September 3, 2015, I received a call from a woman who said she was conducting research on behalf of a group. She repeatedly refused to identify herself and did not disclose that she was recording the call until about 10 minutes into our conversation. I was not told that the information sought was going to be used in a lawsuit.

6.      The caller asked me numerous general questions about the mortgage industry and the companies for which I worked. The caller also specifically asked me whether, prior to 2012, I ever endorsed allonges and deed assignments. I told her that I had endorsed allonges and deed assignments for all three companies for which I worked, including People's Choice, and then I corrected my statement. I never endorsed allonges or deed assignments for UBS because I was never an officer for UBS. I most definitely endorsed allonges and deed assignments on behalf of People's Choice. This point is not entirely clear on the audio recording of the conversation, which was provided to me by Gabrielle Richards, an attorney for LNV Corporation.

7.      I reviewed the Note and allonges at issue in this lawsuit at the request of Ms. Richards. Although I have no specific recollection of signing the allonge that bears my name (I signed thousands of allonges during my career), I can definitively say that the signature on the allonge is my own. The Note and allonges are attached to this declaration as Exhibit 1.

*I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.*

Dated: October 7, 2015.

Dana B. Lantry

2-      DECLARATION OF DANA B. LANTRY

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

documents, including allonges to notes and deed of trust assignments.

5.    On or about September 3, 2015, I received a call from a woman who said she was conducting research on behalf of a group. She repeatedly refused to identify herself and did not disclose that she was recording the call until about 10 minutes into our conversation. I was not told that the information sought was going to be used in a lawsuit.

6.    The caller asked me numerous general questions about the mortgage industry and the companies for which I worked. The caller also specifically asked me whether, prior to 2012, I ever endorsed allonges and deed assignments. I told her that I had endorsed allonges and deed assignments for all three companies for which I worked, including People's Choice, and then I corrected my statement. I never endorsed allonges or deed assignments for UBS because I was never an officer for UBS. I most definitely endorsed allonges and deed assignments on behalf of People's Choice. This point is not entirely clear on the audio recording of the conversation, which was provided to me by Gabrielle Richards, an attorney for LNV Corporation.

7.    I reviewed the Note and allonges at issue in this lawsuit at the request of Ms. Richards. Although I have no specific recollection of signing the allonge that bears my name (I signed thousands of allonges during my career), I can definitively say that the signature on the allonge is my own. The Note and allonges are attached to this declaration as Exhibit 1.

*I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.*

Dated: October  7  , 2015.

Dana B. Lantry

2-    DECLARATION OF DANA B. LANTRY

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

79707-0017/128125662.1

## CERTIFICATE OF SERVICE

I certify that I served the foregoing **DECLARATION OF DANA B. LANTRY** on defendant Denise Subramaniam at 13865 SW Walker Rd., Beaverton, OR 97005 by depositing a copy in the U.S. Mail in a sealed postage-prepaid envelope and deposited with the United States Postal Service at Portland, Oregon on the date set forth below.

DATED: October 7, 2015

s/ Gabrielle D. Richards
Gabrielle D. Richards, OSB No. 114992
GRichards@perkinscoie.com

Attorneys for Plaintiff
LNV Corporation

PAGE 1-   CERTIFICATE OF SERVICE

79707-0017/128125662.1

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Loan Number ████7572

## ADJUSTABLE RATE NOTE
(LIBOR Six-Month Index (As Published In The Wall Street Journal)-Rate Caps)
Including Prepayment Penalty

### NOTICE TO BORROWER
Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement (Ore Rev Stat §82.160; Or Admin R §441-870-0040.)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| 02/10/2004 | IRVINE | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

13865 SW WALKER ROAD, Beaverton, OREGON 97005
[Property Address]

### 1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 176,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is PEOPLE'S CHOICE HOME LOAN, INC. a WYOMING CORPORATION.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.990% . The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.  PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on April 1, 2004. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on March 1, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O.Box 512809, Los Angeles, CA 90051-5128 or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 1,169.76 . This amount may change.

(C) Monthly  Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Date(s)
The interest rate I will pay may change on the 1st day of March, 2006  and every  6th  month(s) thereafter. Each date on which my interest rate could change is called a "Change Date."

EXHIBIT 1
Page 1 of 28

with the first Change Date, my interest rate will be based on an Index. The "Index" is the average offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as the Wall Street Journal. The most recent Index figure available as of the date 45 days before each ate is called the "Current Index."

e Index is no longer available, the Note Holder will choose a new index that is based upon comparable ation. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding five and one-quarter percentage points ( 5.250% ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than  9.990% or less than 6.990 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one  percentage point(s) ( 1.000% ) from the rate of interest I have been paying for the preceding 6 months.

My interest rate will never be greater than 12.990%.   My interest rate will never be less than 6.990%.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are  due.  A payment of Principal only before it is due is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments then due under this Note.

The Note Holder will use my Prepayment to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial prepayment may be offset by an increase in the interest rate.

If within Twenty-four (24) months from the date of execution of the Security Instrument, I make full Prepayment or partial Prepayment, and the total of such Prepayment(s) in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to 6 months' advance interest on the amount by which the total of my Prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

EXHIBIT 1
Page 2 of 28

...GES

...ich applies to this loan and which sets maximum loan charges, is finally interpreted so that the ...er loan charges collected or to be collected in connection with this loan exceed the permitted limits, ...such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted ...b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note ...ay choose to make this refund by reducing the Principal I owe under this Note or by making a direct ...t to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

**8. GIVING OF NOTICES**

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

SECURED NOTE is a uniform instrument with limited variations in some jurisdictions. In addition to the protections the Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), same date as this Note, protects the Note Holder from possible losses that might result if I do not keep that I make in this Note. That Security Instrument describes how and under what conditions I may ed to make immediate payment in full of all amounts I owe under this Note. Some of those conditions follows:

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____ (Seal)          _____ (Seal)
DENISE SUBRAMANIAM          -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                    -Borrower

                                                          [Sign Original Only]

EXHIBIT 1
Page 4 of 28

LaSalle Bank National Association, as Trustee
for certificateholders of Bear Stearns Asset
Backed Securities I LLC Asset Backed
Certificates Series 2004-HE4\

"Pay to the order of

Without recourse"
PEOPLE'' CHOICE HOME LOAN, INC.
A Wyoming Corporation

By

Title:

Dana Lantry
Asst. Vice President

EXHIBIT 1
Page 5 of 28

# Allonge

Account Number:          ████7572

Borrower(s):          Denise Subramaniam

Address:          13865 SW Walker Road
                  Beaverton, OR 97005

Note Amount:          $ 176,000.00

Closing Date:          02/10/2004

"Pay to the Order of:

RESIDENTIAL FUNDING COMPANY, LLC

Without recourse"

PEOPLE'S CHOICE HOME LOAN INC.

A Wyoming Corporation

By: _____

Dana Lantry
Vice President

EXHIBIT 1
Page 6 of 28

ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS
ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE

POOL:        0        LOAN ID:    ▮▮▮5983

NOTE DATE:    2/10/2004    LOAN AMOUNT:       $176,000.00

BORROWER NAME:  DENISE SUBRAMANIAM

PROPERTY ADDRESS:    13865 SW WALKER ROAD, BEAVERTON, OR  97005

PAY TO THE ORDER OF

**LNV Corporation**

WITHOUT RECOURSE

Residential Funding Company, LLC

By: _____

Name: Jason J. Vecchio
Title: Post Funding Manager
Residential Funding Company, LLC

EXHIBIT 1
Page 7 of 28

Washington nty, Oregon   **2004-019937**
03/01/2004 .:14:25 AM
O-M         Cnt=1 Stn=7 K GRUNEWALD
$85.00 $8.00 $11.00 · Total = $112.00

I, Jerry Hanson, Director of Assessment and Taxation
and Ex-Officio County Clerk for Washington County,
Oregon, do hereby certify that the within instrument of
writing was received and recorded in the book of
records of said county.   Jerry Hanson
Jerry R. Hanson, Director of Assessment and Taxation,
Ex-Officio County Clerk

Until a change is requested all tax statements shall be sent
to the following address.

WHEN RECORDED MAIL TO

People's Choice Home Loan, Inc.
7515 IRVINE CENTER DR., IRVINE,
CA  92618

TAX ACCOUNT NUMBER

------[Space Above This Line For Recording Data]------

# DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  February 10, 2004                      ,
together with all Riders to this document.
(B) "Borrower" is DENISE  SUBRAMANIAM

Borrower is the trustor under this Security Instrument.
(C) "Lender" is PEOPLE'S CHOICE HOME LOAN, INC., a WYOMING CORPORATION

Lender is a CORPORATION
organized and existing under the laws of WYOMING
███ 7572
OREGON-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT            Form 3038  1/01

-6(OR) (0104)
Page 1 of 15                    Initials: DS
VMP MORTGAGE FORMS - (800)521-7291

EXHIBIT 1
Page 8 of 28



Lender's address is 7515 IRVINE CENTER DR., IRVINE, CA 92618

Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is Paul S. Cosgrove, Lindsay Harte, Law Off, 1300 S. W. 5th Ave., #3400 Portland, OR 97201

(E) "Note" means the promissory note signed by Borrower and dated February 10, 2004
The Note states that Borrower owes Lender ONE HUNDRED SEVENTY-SIX THOUSAND AND 00/100
Dollars
(U.S. $176,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than March 1, 2034

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

7572

-6(OR) (0104)                    Page 2 of 15                    Initials: P.S.                    Form 3038   1/01

EXHIBIT 1
Page 9 of 28



2004-19937

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
    COUNTY              of              WASHINGTON              ;
    [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT 'A'

which currently has the address of

13965 SW WALKER ROAD                                           [Street]
Beaverton                          [City], Oregon 97005      [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

7572

-6(OR) (0104)                    Page 3 of 16            Initials: D.S.            Form 3038   1/01

EXHIBIT 1
Page 10 of 28



currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

7572

-6(OR) (0104)                          Page 4 of 15          Initials D.S.          Form 3038   1/01

EXHIBIT 1
Page 11 of 28



in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

EXHIBIT 1
Page 12 of 28



lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

7872

-6(OR) (0104)                    Page 6 of 15          Initials: 25.          Form 3038    1/01

EXHIBIT 1
Page 13 of 28



the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

7572

-6(OR) (0101)                    Page 7 of 15                    Initials: D.S.                    Form 3038  1/01

EXHIBIT 1
Page 14 of 28



attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

EXHIBIT 1
Page 15 of 28


2004~19937

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

7572

-6(OR) (0104)                    Page 9 of 15              Initials: DD.        Form 3038  1/01

EXHIBIT 1
Page 16 of 28



to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

   **13.** **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

   Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

   **14.** **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

   If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

   **15.** **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

7572

-6(OR) (0104)                              Page 10 of 15                    Initials: _D.S._              Form 3038  1/01

EXHIBIT 1
Page 17 of 28



**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

EXHIBIT 1
Page 18 of 28



requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

7572

-6(OR) (0104)                Page 12 of 15              Initials DS.              Form 3038  1/01

EXHIBIT 1
Page 19 of 28



2004-15937

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Attorneys' Fees. As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

26. Protective Advances. This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

27. Required Evidence of Property Insurance.

**WARNING**

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

7572

-6(OR) (0104)          Page 13 of 15        Initials: D.S.        Form 3038   1/01

EXHIBIT 1
Page 20 of 28



2C04-19937

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                            DENISE SUBRAMANIAM        -Borrower


_____                    _____ (Seal)
                                                                     -Borrower


_____ (Seal)             _____ (Seal)
                 -Borrower                                           -Borrower


_____ (Seal)             _____ (Seal)
                 -Borrower                                           -Borrower


_____ (Seal)             _____ (Seal)
                 -Borrower                                           -Borrower


7572

-6(OR) (5104)                    Page 14 of 15                    Form 3038  1/01

EXHIBIT 1
Page 21 of 28



2004-15957

STATE OF OREGON,      Multnomah      County ss:
On this   11th   day of   February   2004   personally appeared the above named

Denise Subramaniam

and acknowledged the foregoing instrument to be his/her/their voluntary act and deed.

My Commission Expires: 1.31.05            Before me:

(Official Seal)



                                    Notary Public for Oregon

> OFFICIAL SEAL
> HEIDI M GAMELGAARD
> NOTARY PUBLIC-OREGON
> COMMISSION NO. A341340
> MY COMMISSION EXPIRES JAN, 31, 2005

7572
6(OR) (0104)              Page 15 of 15        Initials: D.S.      Form 3038   1/01

EXHIBIT 1
Page 22 of 28



2004-15937

Loan Number ███7572

**ADJUSTABLE RATE RIDER**
**(LIBOR Six-Month Index (As Published In The Wall Street Journal)-Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 10th day of  February, 2004 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to  PEOPLE'S CHOICE HOME LOAN, INC. a WYOMING CORPORATION ("Lender") of the same date and covering the property described in the Security Instrument and located at:

13865 SW WALKER ROAD, Beaverton, OREGON 97005
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of 6.990%. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
   The interest rate I will pay may change on the 1st day of March, 2006 and on that day every 6 month(s) thereafter. Each date on which my interest rate could change is called a "Change Date."

   **(B) The Index**
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

msar1      09/26/01                         Page 1 of 3                              Initials: D.S.

EXHIBIT 1
Page 23 of 28



**(C)  Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding five and one-quarter  percentage points ( 5.250%)to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.990 % or less than 6.990 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  one percentage points ( 1.000% ) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 12.990%.  My interest rate will never be less than 6.990%.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

msar2    09/28/01                                Page 2 of 3                      Initials: _BS_

EXHIBIT 1
Page 24 of 28



## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial prepayment may be offset by an increase in the interest rate.

If within Twenty-four (24) months from the date of execution of the Security Instrument, I make full Prepayment or partial Prepayment, and the total of such Prepayment(s) in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to 6 months' advance interest on the amount by which the total of my Prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
DENISE SUBRAMANIAM            -Borrower                                                   -Borrower

_____ (Seal)          _____ (Seal)
                                       -Borrower                                                   -Borrower

_____ (Seal)          _____ (Seal)
                                       -Borrower                                                   -Borrower

msar3      09/26/01                                Page 3 of 3                         Initials: D.S.

EXHIBIT 1
Page 25 of 28

2024-19837

**Exhibit "A"**

Lot 4, Block 2, DEVONSHIRE, in the County of Washington and State of Oregon.

EXHIBIT 1
Page 26 of 28



Washington County, Oregon    2008-073972
08/27/2008 02:55:23 PM
D-MA            Cnt=1 Stn=9 C TOMPKINS
$10.00 $5.00 $11.00 - Total = $26.00

0128506120080073972002023

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.
Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

Return Address:
MGC Mortgage Inc
Document Control
7195 Dallas Parkway
Plano, TX 75024
BC 619600

Please print or type information **OREGON STATE RECORDER'S Cover Sheet**

| |
|---|
| **1. DOCUMENT TITLE(s)** (or transactions contained therein): (all areas applicable to your document <u>must</u> be filled in) <br><br>　　ASSIGNMENT OF DEED OF TRUST |
| **2. DIRECT PARTY/GRANTOR,** required by ORS 205.125(1)(b) and ORS 205.160 <br><br>　　Residential Funding Company, LLC <br>　　8400 Normandale Lake Blvd., Suite 600 <br>　　Minneapolis, MN 55437-1073 |
| **3. INDIRECT PARTY / GRANTEE(s)** required by ORS 205.125(1)(a) and ORS 205.160 <br><br>　　LNV Corporation <br>　　7195 Dallas Parkway <br>　　Plano, TX 75024 |
| **4. TRUE and ACTUAL CONSIDERATION** (if any), ORS 93.030) <br><br>　　Ten and No/100 Dollars ($10.00) |
| **5. ALL TAX STATEMENTS SHALL BE SENT TO THE FOLLOWING ADDRESS:** <br><br>　　MGC Mortgage, Inc. <br>　　7195 Dallas Parkway <br>　　Plano, TX 75024 |
| **6. FULL OR PARTIAL SATISFACTION ORDER or WARRANT FILED IN THE COUNTY CLERKS LIEN RECORDS, ORS 205.121(1)(E)** |
| **7. THE AMOUNT OF THE CIVIL PENALTY or THE AMOUNT, INCLUDING PENALTIES, INTEREST AND OTHER CHARGES FOR WHICH THE WARRANT, ORDER OR JUDGMENT WAS ISSUED. ORS 205.125(1)© and ORS 18.325** |

EXHIBIT 1
Page 27 of 28

---

### CORPORATION ASSIGNMENT of DEED OF TRUST

RFC Loan Number: ▓▓▓5983
Seller Loan Number: ▓▓▓7572

FOR VALUE RECEIVED, 'Residential Funding Company, LLC fka Residential Funding Corporation'

the undersigned hereby grants, assigns and transfers to

LNV Corporation
7195 Dallas Parkway
Plano, Texas 75024

all beneficial interest under that certain Deed of Trust dated 2/10/2004
executed by DENISE SUBRAMANIAM

TO/FOR: People's Choice Home Loan, Inc a Wyoming Corporation.

and recorded in Book _n/a_ on Page _n/a_ as Instrument No. 2004-019937 on 3/1/04
of official Records in the County Recorder's Office of _Washington_ County, Oregon.

Property Address:   13865 SW WALKER ROAD  BEAVERTON, OR  97005
MORTGAGE AMOUNT:  $176,000.00
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust.

'Residential Funding Company, LLC fka Residential Funding Corporation'

BY: _____
NAME: Betty Wright
TITLE: Assistant Vice President

STATE OF                                    Minnesota )
COUNTY OF                                   Hennepin )

On 3/10/2008 before me, the undersigned, a Notary Public in and for said State personally appeared Betty
Wright, Assistant Vice President of 'Residential Funding Company, LLC fka Residential Funding Corporation'
personally known to me to be the person whose name is subscribed to the within instrument and acknowledged
to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument
the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

This instrument was drafted by Diane Meistad,
Residential Funding Company, LLC, One Meridian
Crossings, Suite 100, Minneapolis, MN 55423,
(952) 979-4000.

_Diane M Meistad_
Notary Public in and for said State

DIANE M. MEISTAD
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2013

After Recording Return to:
MGC Mortgage Inc
Document Control
7195 Dallas Parkway
Plano, Texas  75024
BC 619600

EXHIBIT 1
Page 28 of 28

# EXHIBIT 2

**Washington County Oregon Recorded Instrument**

**No: 2006-077542**

**Assignment of Deed of Trust**

**Endorsed on December 29, 2005 by Dana Lantry as**

**Asst. Vice President of People's Choice Home Loans, Inc.**

**and assigns to HOMECOMINGS FINANCIAL NETWORK INC.**

NOTE:    Undated allonge endorsed by Dana Lantry as Vice President of
People's Choice Home Loans, Inc. and conveys to
RESIDENTIAL FUNDING COMPANY LLC

(See Exhibit 1 Page 10)

# This Recorded Assignment was OMMITTED because both conveyances are mutually exclusive; BOTH cannot both be genuine

Washington County, Oregon
06/28/2006 03:24:13 PM    **2006-077542**
D-MA          Cnt=1 Stn=22 I REED
$10.00 $6.00 $11.00 - Total = $27.00

00974310200807754200200021

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.
Richard W. Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

**RECORD AND RETURN TO**
GMAC-RFC
One Meridian Crossing, Suite #100
Minneapolis, MN 55423
RECORD CENTER AND DOCUMENT
ROUTING 03-03-40
Litton # 18099663

# ASSIGNMENT OF DEED OF TRUST *10335983*

For Value Received, PEOPLE'S CHOICE HOME LOAN, INC., a WYOMING CORPORATION

, holder of a Deed of Trust (herein "Assignor") whose address is
7515 IRVINE CENTER DR., IRVINE, CA 92618

, does hereby grant, sell,
assign, transfer and convey, unto Homecomings Financial Network, Inc.

, a corporation
organized and existing under the laws of                                        (herein "Assignee"),
whose address is ONE MERIDIAN CROSSING, Suite 100, MINNEApolis, MN 56423 ,
a certain Deed of Trust, dated 02/10/2004                              , made and executed by
DENISE SUBRAMANIAM

to Paul S. Cosgrove, Lindsay Harte, Law Off
Trustee, upon the
following described property situated in WASHINGTON                              , State
of Oregon:
SEE XXXXXX DESCRIPTION XXXXXXXX XXXXXX XXXXXX XXXXXX XXXXXX XXXXXX XXXXXX XXXXXX
(A.P.N. #: R29757)
LEGAL DESCRIPTION:
LOT 4, BLOCK 2, DEVONSHIRE, IN THE COUNTY OF WASHINGTON AND STATE OF OREGON.

such Deed of Trust having been given to secure payment of ONE HUNDRED SEVENTY-SIX THOUSAND
AND 00/100                                    ($ 176,000.00          )
(Include the Original Principal Amount)
which Deed of Trust is of record in Book, Volume, or Liber No.          , at page          (or
as No. 2004-019937 ) of the          Records of WASHINGTON
County, State of Oregon, together with the note(s) and obligations therein described, the money due and to
become due thereon with interest, and all rights accrued or to accrue under such Deed of Trust.
Oregon Assignment of Deed of Trust
with Acknowledgment

VMP-995W(OR) (9711).04          11/97
Page 1 of 2
VMP MORTGAGE FORMS - (800)521-7291

# 10097572

FIDELITY NATIONAL TITLE CO.

TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Deed of Trust on

*12-29-05*

Witness: John Cardenas

Witness: CARMEL MULLINS

PEOPLE'S CHOICE HOME LOAN, INC., a WYOMING CORPORATION

(Assignor)

By: _____
(Signature)

**Dana Lantry**
Asst. Vice President

Attest

Seal:

This Instrument Prepared By: First American Title Insurance Company   , address: 200 SW Market, #150, Portland, OR 97201                        , tel. no.: (503)790-7890

State of *CALIFORNIA*
County of *ORANGE*

This instrument was acknowledged before me on *12-29-2005*

by *DANA LANTRY, Asst. VICE PRESIDENT*

as *PEOPLE'S CHOICE HOME LOAN INC.*                    of

_____
*Sergio Lomeli*

LMP-995W(OR) (9711)04                     Page 2 of 2

*#10097572*

SERGIO LOMELI
Commission # 1372949
Notary Public - California
Orange County
My Comm. Expires Sep 1, 2006

Washington County, Oregon   **2006-077542**
06/28/2006 03:24:13 PM
D-MA        Cnt=1 Stn=22 I RECO
$10.00 $6.00 $11.00 - Total = $27.00

00974310200800775420020021

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.
Richard W. Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

**RECORD AND RETURN TO**
GMAC-RFC
One Meridian Crossing, Suite #100
Minneapolis, MN 55423
RECORD CENTER AND DOCUMENT
ROUTING 03-03-40
Litton # 18099663

## ASSIGNMENT OF DEED OF TRUST  _10335983_

For Value Received, PEOPLE'S CHOICE HOME LOAN, INC., a WYOMING CORPORATION

, holder of a Deed of Trust (herein "Assignor") whose address is
7515 IRVINE CENTER DR., IRVINE, CA  92618

, does hereby grant, sell,
assign, transfer and convey, unto  Homecomings Financial Network, Inc.

, a corporation
organized and existing under the laws of                                      (herein "Assignee"),
whose address is  ONE MERIDIAN CROSSING, SUITE 100, MINNEAPOLIS, MN  56423      ,
a certain Deed of Trust, dated 02/10/2004                           , made and executed by
DENISE SUBRAMANIAM

to Paul S. Cosgrove, Lindsay Harte, Law Off                                      ,
                                                              Trustee, upon the
following described property situated in WASHINGTON                  , State
of Oregon:
SEE XXBOXXX DESCRIPTXXX XXTTACHXX XHEREXX AND XMADEX AX PARTX HEREOFX XX EXHIBITXXXX
(A.P.N. #: R29757)
LEGAL DESCRIPTION:
LOT 4, BLOCK 2, DEVONSHIRE, IN THE COUNTY OF WASHINGTON AND STATE OF OREGON.

such Deed of Trust having been given to secure payment of ONE HUNDRED SEVENTY-SIX THOUSAND
AND 00/100                                         ($176,000.00              )
(Include the Original Principal Amount)
which Deed of Trust is of record in Book, Volume, or Liber No.                  , at page          (or
as No. 2004-019937 ) of the                    Records of WASHINGTON
County, State of Oregon, together with the note(s) and obligations therein described, the money due and to
become due thereon with interest, and all rights accrued or to accrue under such Deed of Trust.
Oregon Assignment of Deed of Trust
with Acknowledgment
1210-995W(OR) (9711) 04          11/97
Page 1 of 2
VMP MORTGAGE FORMS - (800)521-7291

# 10097572

TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Deed of Trust on 12-29-05

Witness  *John Cardenas*

PEOPLE'S CHOICE HOME LOAN, INC., a WYOMING CORPORATION

(Assignor)

Witness  *CARMEL MULLINS*

By: _____
(Signature)

**Dana Lantry**
**Asst. Vice President**

Attest

Seal:

This Instrument Prepared By: First American Title Insurance Company , address: 200 SW Market, #150, Portland, OR 97201 , tel. no.:(503)790-7890

State of *CALIFORNIA*
County of *ORANGE*

This instrument was acknowledged before me on *12-29-2005*
by  *DANA LANTRY, Asst. VICE PRESIDENT*

as  *PEOPLE'S CHOICE HOME LOAN INC.*  of

*Sergio Lomeli*

.995W(OR) (9711).04

Page 2 of 2

*#10099572*

SERGIO LOMELI
Commission # 1372949
Notary Public - California
Orange County
My Comm. Expires Sep 1, 2006

# EXHIBIT 3

**Washington County Oregon Recorded Instrument**

**No: 2006-077543**

**Substitution of Trustee for HOMECOMINGS**

**Executed on <u>MARCH 18, 2006</u>**

RECORDING REQUESTED BY:

AND WHE RECORDED MAIL TO:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON  CA 92022-9004





Washington County, Oregon **2006-077543**
06/28/2006 03:24:13 PM
D-MST      Cnt=1  Stn=22 I REED
$10.00 $6.00 $11.00 · Total = $27.00

0097431120080077543020028

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
Instrument of writing was received and recorded in the
book of records of said county.

Richard W. Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

_____Space Above This Line For Recorder's use_____

Loan No.: XXXX9663
T.S. No.: 1077668-09

# SUBSTITUTION OF TRUSTEE

WHEREAS, DENISE SUBRAMANIAM        was the original Grantor, PAUL S. COSGROVE, LINDSAY HARTE, LAW OFF was the original Trustee and PEOPLE'S CHOICE HOME LOAN, INC.        was the original Beneficiary under that certain Deed of Trust dated February 10, 2004 and recorded on March 01, 2004 as Instrument No. 2004-019937, in Book XX, Page XX of the Official Records of WASHINGTON County, Oregon and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in the place and stead of present Trustee thereunder,

NOW, THEREFORE, HOMECOMINGS FINANCIAL NETWORK, INC.        hereby substitutes CAL-WESTERN RECONVEYANCE CORPORATION, A licensed Oregon Escrow agent and a California Corporation whose corporate address is 525 EAST MAIN STREET, P.O. BOX 22004, EL CAJON  CA 92022-9004 as a Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

# SUBSTITUTION OF TRUSTEE

Loan No.: XXXX9663
T.S: No.: 1077668-09

DATED: *March 18, 2006*

Litton Loan Servicing LP
Attorney In Fact

HOMECOMINGS FINANCIAL NETWORK, INC.

DEBRA LYMAN

VICE PRESIDENT

State of *Texas*
County of *Harris*

On *March 20, 2006* before me,
LAURA HERRERA
a Notary Public in and for said state, personally appeared
__DEBRA LYMAN, VICE PRESIDENT,__
personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

(This area for Official notary seal)

Signature

Laura Herrera
Notary Public State of Texas
My Commission Expires
06-14-2008

SUBOR.DOC                    Rev. 2/16/2006                    Page 2 of 2

# Office DEPOT  OfficeMax

## PLEASE BRING THIS COPY ACTIVITY REPORT TO THE CASHIER

MACHINE SERIAL NUMBER: A2M635746

**DATE: 10/11/2017**
**TIME: 13:49:40**

TOTAL MARKED IMAGES START: 162018
                    FINISH: 162039

|  | Description | QTY |
|---|---|---|
|  | B&W Single Sided Letter PRINT from USB-281315 | 3 |
|  | B&W Single Sided Letter PRINT from USB-281315 | 5 |
|  | B&W Single Sided Letter PRINT from USB-281315 | 6 |
|  | B&W Single Sided Letter PRINT from USB-281315 | 6 |

# EXHIBIT 4

**Washington County Oregon Recorded Instrument**

**No: 2006-077544**

## Notice of Default in behalf of HOMECOMINGS

Executed on **June 26, 2006**



Washington County, Oregon   **2006-077544**
06/28/2006 03:24:13 PM
D-NDES        Cnt=1 Stn=22 I REED
$20.00 $6.00 $11.00 • Total = $37.00

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.
Richard W. Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

AFTER RECORDING RETURN TO:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON  CA  92022-9004
(619)590-9200

(Recorder's Use)

# NOTICE OF DEFAULT AND ELECTION TO SELL

Loan No.: XXXX9663
T.S. No.: 1077668-09

Reference is made to that certain trust deed made by
DENISE SUBRAMANIAM
as grantor,
to PAUL S. COSGROVE, LINDSAY HARTE, LAW OFF
as trustee,
in favor of PEOPLE'S CHOICE HOME LOAN, INC.
as beneficiary, dated February 10, 2004, recorded March 01, 2004, in the official records of WASHINGTON
County, Oregon, in book/reel/volume No. XX at page XX, fee/file/instrument/microfilm/reception No. 2004-
019937 (indicate which), covering the following described real property situated in said County and State, to-
wit:
LOT 4, BLOCK 2, DEVONSHIRE, IN THE COUNTY OF WASHINGTON AND STATE OF OREGON.

CAL-WESTERN RECONVEYANCE CORPORATION
as Trustee, hereby certifies that no assignments of the trust deed by the trustee or by the beneficiary and no
appointments of a successor-trustee have been made except as recorded in the mortgage records of the county
or counties in which the above described real property is situated;  further, that no action, suit or proceeding
has been instituted to recover the debt, or any part thereof, now remaining secured by the said trust deed, or, if
such action or proceeding has been instituted, such action or proceeding has been dismissed except an action
to appoint a receiver pursuant to ORS 86.010, or the foreclosure of another trust deed, mortgage, security
agreement or other consensual or nonconsensual security interest or lien securing repayment of this debt.

There is a default by the grantor or other person owing an obligation, or by their successor-in-interest, the
performance of which is secured by said trust deed with respect to provisions therein which authorize sale in
the event of default of such provision;  the default for which foreclosure is made is grantor's:

FIDELITY NATIONAL TITLE CO.

NODOR.DOC                    Rev. 4/07/06                    Page 1 of 3

# NOTICE OF DEFAULT AND ELECTION TO SELL

Loan No.: XXXX9663
T.S. No.: 1077668-09

Failure to pay the monthly payment due January 1, 2006 of principal and interest and subsequent installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary pursuant to the terms and conditions of said deed of trust.

Monthly Payment: $1,169.76  Monthly Late Charge: $58.49
By reason of said default, the beneficiary has declared all obligations secured by said trust deed immediately due and payable said sums being the following, to-wit:
    The principal sum of $172,780.69 together with interest thereon at the rate of the rate of 6.990% per annum, from December 01, 2005 until paid; plus all accrued late charges thereon; and all trustee's fees, foreclosure costs and any sums advanced by the beneficiary pursuant to the terms and conditions of said deed of trust.

    Notice is hereby given that the beneficiary and trustee, by reason of said default, have elected and do hereby elect to foreclose said trust deed by advertisement and sale pursuant to Oregon Revised Statutes Sections 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash funds the interest in the said described property which the grantor had, or had the power to convey, at the time of the execution by him of the trust deed, together with any interest the grantor or his successors in interest acquired after execution of the trust deed to satisfy the obligations secured by said trust deed and the expenses of the sale, including the compensations of the trustee as provided by law, and the reasonable fees of trustee's attorneys.

    Said sale will be held at the hour of 1:00pm, Standard of Time as established by Section 187.110 of Oregon Revised Statutes on November 02, 2006 at the following place:
AT THE GRIFFITH DRIVE ENTRANCE TO BEAVERTON CITY HALL
4755 SW GRIFFITH DRIVE
in the City of BEAVERTON County of WASHINGTON, State of Oregon, which is the hour, date and place fixed by the trustee for said sale.

    Other than as shown of record neither the said beneficiary nor the said trustee has any actual notice of any person having or claiming to have any lien upon or interest in the real property hereinabove described subsequent to the interest of the trustee in the trust deed, or of any successor in interest to the grantor or of any lessee or other persons in possession of or occupying the property:

    Notice is further given that any person named in Section 86.753 of Oregon Revised Statutes has the right to have the foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of said principal as would not then be due had no default occurred), together with costs, trustee's and attorney's fee by curing any other default complained of in the Notice of Default by tendering the performance required under the obligation or trust deed, at any time prior to five days before the date last set for sale.

NODOR.DOC                          Rev. 4/07/06                          Page 2 of 3

# EXHIBIT 5

**Washington County Oregon Recorded Instrument No: 2008-073971**

**Assignment of Deed of Trust**

**Purports to assign from HOMECOMINGS to RFC**

**Purportedly endorsed on APRIL 3, 2006**

**Recorded by MGC Mortgage Inc.**

**owned by D. Andrew Beal**

10/6
11

**Return Address:**
MGC Mortgage Inc
Document Control
7195 Dallas Parkway
Plano, TX 75024
BC 619600

Washington County, Oregon   **2008-073971**
08/27/2008 02:55:23 PM
D-MA          Cnt=1  Stn=9  C TOMPKINS
$10.00 $5.00 $11.00 - Total = $26.00



01285060200800739710020026

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.
Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

---

Please print or type information **OREGON STATE RECORDER'S Cover Sheet**

**1. DOCUMENT TITLE(s)** (or transactions contained therein): (all areas applicable to your document <u>must</u> be filled in)

  ASSIGNMENT OF DEED OF TRUST

**2. DIRECT PARTY/GRANTOR**, required by ORS 205.125(1)(b) and ORS 205.160

  Homecomings Financial Network

**3. INDIRECT PARTY / GRANTEE(s)** required by ORS 205.125(1)(a) and ORS 205.160

  Residential Funding Company, LLC
  8400 Normandale Lake Blvd., Suite 600
  Minneapolis, MN 55437-1073

**4. TRUE and ACTUAL CONSIDERATION** (if any), ORS 93.030)

  Ten and No/100 Dollars ($10.00)

**5. ALL TAX STATEMENTS SHALL BE SENT TO THE FOLLOWING ADDRESS:**

  MGC Mortgage, Inc.
  7195 Dallas Parkway
  Plano, TX 75024

**6. FULL OR PARTIAL SATISFACTION ORDER or WARRANT FILED IN THE COUNTY CLERKS LIEN RECORDS, ORS 205.121(1)(E)**

**7. THE AMOUNT OF THE CIVIL PENALTY or THE AMOUNT, INCLUDING PENALTIES, INTEREST AND OTHER CHARGES FOR WHICH THE WARRANT, ORDER OR JUDGMENT WAS ISSUED. ORS 205.125(1)© and ORS 18.325**

### CORPORATION ASSIGNMENT of DEED OF TRUST

RFC Loan Number: 10335983
Seller Loan Number: 10097572



**FOR VALUE RECEIVED, Homecomings Financial Network, Inc.**

the undersigned hereby grants, assigns and transfers to

Residential Funding Company, LLC
8400 Normandale Lake Blvd Suite 600
Minneapolis, MN 55437-1073

all beneficial interest under that certain Deed of Trust dated 02/10/2004
executed by DENISE SUBRAMANIAM

TO/FOR: *People's Choice Home Loan, Inc. a Wyoming Corporation*

and recorded in Book _N/A_ on Page _N/A_ as Instrument No. _2004-019937_ on _3/1/04_
of official Records in the County Recorder's Office of _Washington_ County, Oregon.

Property Address:    13865 SW WALKER ROAD  BEAVERTON, OR  97005
MORTGAGE AMOUNT:  $176,000.00
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust.

Homecomings Financial Network, Inc.

BY: _Masse Adjetey_
NAME: Masse Adjetey
TITLE: Vice President

STATE OF                    Minnesota )
COUNTY OF                   Hennepin )

On 04/03/2006 before me, the undersigned, a Notary Public in and for said State personally appeared Masse
Adjetey, Vice President of Homecomings Financial Network, Inc. personally known to me to be the person
whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in
his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the
person acted, executed the instrument.  WITNESS my hand and official seal.

This instrument was drafted by Mary Olson,
Residential Funding Corporation, One Meridian
Crossings, Suite 100, Minneapolis, MN 55423,
(952) 979-4000.

_Mary K Olson_
Notary Public in and for said State

MARY K. OLSON
NOTARY PUBLIC-MINNESOTA
MY COMMISSION EXPIRES 1/31/2010

After Recording Return to:
MGC Mortgage Inc
Document Control
7195 Dallas Parkway
Plano, Texas  75024
BC 419400

# EXHIBIT 6

**Washington County Oregon Recorded Instrument**

**No: 2008-073972**

**Assignment of Deed of Trust**

**Purports to assign from RFC to LNV Corporation**

**Purportedly endorsed on March 10, 2008**

**LNV Corporation is owned by D. Andrew Beal**

**LNV Corporation didn't exist on March 10, 2008**

Washington County, Oregon **2008-073972**
09/27/2008 02:55:23 PM
D-MA        Cnt=1 Stn=9 C TOMPKINS
$10.00 $5.00 $11.00 - Total = $26.00

01285061200800739720020023

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.

Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

**Return Address:**
MGC Mortgage Inc
Document Control
7195 Dallas Parkway
Plano, TX 75024
BC 619600

Please print or type information **OREGON STATE RECORDER'S Cover Sheet**

**1. DOCUMENT TITLE(s)** (or transactions contained therein): (all areas applicable to your document <u>must</u> be filled in)

    ASSIGNMENT OF DEED OF TRUST

**2. DIRECT PARTY/GRANTOR**, required by ORS 205.125(1)(b) and ORS 205.160

    Residential Funding Company, LLC
    8400 Normandale Lake Blvd., Suite 600
    Minneapolis, MN 55437-1073

**3. INDIRECT PARTY / GRANTEE(s)**   required by ORS 205.125(1)(a) and ORS 205.160

    LNV Corporation
    7195 Dallas Parkway
    Plano, TX 75024

**4. TRUE and ACTUAL CONSIDERATION** (if any), ORS 93.030)

    Ten and No/100 Dollars ($10.00)

**5. ALL TAX STATEMENTS SHALL BE SENT TO THE FOLLOWING ADDRESS:**

    MGC Mortgage, Inc.
    7195 Dallas Parkway
    Plano, TX 75024

**6. FULL OR PARTIAL SATISFACTION ORDER or WARRANT FILED IN THE COUNTY CLERKS LIEN RECORDS**, ORS 205.121(1)(E)

**7. THE AMOUNT OF THE CIVIL PENALTY** or THE AMOUNT, INCLUDING PENALTIES, INTEREST AND OTHER CHARGES FOR WHICH THE WARRANT, ORDER OR JUDGMENT WAS ISSUED. ORS 205.125(1)© and ORS 18.325

CORPORATION ASSIGNMENT of DEED OF TRUST

RFC Loan Number: 10335983
Seller Loan Number: 10097572
**FOR VALUE RECEIVED, 'Residential Funding Company, LLC fka Residential Funding Corporation'**

the undersigned hereby grants, assigns and transfers to

LNV Corporation
7195 Dallas Parkway
Plano, Texas 75024

all beneficial interest under that certain Deed of Trust dated 2/10/2004
executed by DENISE SUBRAMANIAM
TO/FOR: People's Choice Home Loan, Inc a Wyoming Corporation.

and recorded in Book N/A on Page N/A as Instrument No. 2004-019937 on 3/1/04
of official Records in the County Recorder's Office of Washington County, Oregon.

Property Address:   13865 SW WALKER ROAD   BEAVERTON, OR  97005
MORTGAGE AMOUNT:  $176,000.00
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust,

'Residential Funding Company, LLC fka Residential Funding Corporation'

BY:

STATE OF                                    Minnesota )   NAME: Betty Wright
COUNTY OF                                   Hennepin )   TITLE: Assistant Vice President

On 3/10/2008 before me, the undersigned, a Notary Public in and for said State personally appeared Betty
Wright, Assistant Vice President of 'Residential Funding Company, LLC fka Residential Funding Corporation'
personally known to me to be the person whose name is subscribed to the within instrument and acknowledged
to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument
the entity upon behalf of which the person acted, executed the instrument.  WITNESS my hand and official seal.

This instrument was drafted by Diane Meistad,
Residential Funding Company, LLC, One Meridian
Crossings, Suite 100, Minneapolis, MN 55423,
(952) 979-4000.

Notary Public in and for said State

DIANE M. MEISTAD
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2010

After Recording Return to:
**MGC Mortgage Inc**
Document Control
7195 Dallas Parkway
Plano, Texas  75024
BC 619600